THE FROLIC.

(District Court, D. Rhode Island. November 15, 1906.)

No. 1,132.

ALIENS—VIOLATION OF CHINESE EXCLUSION ACT—FORFEITURE OF VESSEL.

An agreement by the owner to sell a schooner, to be paid for in installments, under which he put the purchaser in possession and appointed him master, with the right to use the vessel and receive her earnings, although retaining title until full payment of the purchase price, was sufficient to authorize the purchaser to appoint another master and to render her subject to condemnation and sale, under Chinese Exclusion Act May 6, 1882, c. 126, § 10, 22 Stat. 61 [U. S. Comp. St. 1901, p. 1309], for the knowing and willful violation of the provisions of such act by the new master so appointed.

In Admiralty.

This is a libel against the schooner Frolic, her boats, tackle, apparel, and furniture, based upon provisions of the Chinese exclusion acts. Condemnation is sought "for the causes following, to wit, for that, to wit, on said 11th day of October, 1906, one Edward H. Junkins, was then and there the master of said schooner, and, then and there being such master, did bring and aid in bringing and land by and from said schooner Frolic within the United States of America, to wit, at the port of Providence, within said district of Rhode Island * * * forty Chinese persons, to wit, Chinese laborers, the same then and there not being entitled to enter the United States, and contrary to the statutes in such case made and provided."

The United States relies on the following provision of the statutes:

"Sec. 10. That every vessel whose master shall knowingly violate any of the provisions of this act shall be deemed forfeited to the United States, and shall be liable to seizure and condemnation in any district of the United States into which such vessel may enter or in which she may be found." Act May 6, 1882, c. 126, 22 Stat. 61; Act July 5, 1884, c. 220, 23 Stat. 117; Act Sept. 13, 1888, c. 1015, 25 Stat. 476; Act May 5, 1892, c. 60, 27 Stat. 25; Act April 29, 1902, c. 641, 32 Stat. 176. See U. S. Comp. St. 1901, pp. 1309, 1312, 1319, and U. S. Comp. St. Supp. 1905, p. 295.

Herbert H. White, of Brookline, Mass., appears as claimant of the Frolic, and denies that on said 11th day of October, 1906, one Edward H. Junkins was then and there the master of said schooner. White alleges that he was the owner of said schooner, and had never appointed said Edward H. Junkins as master, and denies that said Junkins had ever been lawfully appointed master by any one having authority to so appoint him. The claim of White was heard upon an agreed statement of facts, supplemented by certain documentary evidence and by the oral testimony of said White. The agreed statement of facts is as follows:

"First. In this case it is agreed that Herbert H. White, of Brookline, Mass., is the owner of said schooner, subject to such rights as one Herbert F. Colby, of Boston, has under and by virtue of an agreement made between said White and said Colby, dated the 12th day of December, 1902.

"Second. It is agreed that said Herbert F. Colby has had possession of said schooner since said 12th day of December, 1902, under and by virtue of said agreement, a copy of which is made a part of this agreement.

"Third. A certified copy of the certificate of enrollment of said schooner Frolic, marked 'No. 146' and issued at Boston, with the indorsements of the change of master thereon, is made a part of this agreement.

"Fourth. It is agreed that on or about the 11th day of October said schooner, with one E. A. Junkins acting as master, entered the port of Providence in this district, and the crew, aided and abetted by said Junkins, unlawfully, knowingly, and in violation of the Chinese exclusion acts of Congress, landed certain Chinese persons, to wit, about 42 such persons, at the port of Providence.

"Fifth. That said schooner, with said E. A. Junkins acting as master, made a voyage to the island of Newfoundland, within the Dominion of Canada, for the purpose of unlawfully bringing into and landing said Chinese persons within the United States of America.

"Sixth. It is agreed that said schooner made said voyage and committed the unlawful acts hereinbefore set forth without the knowledge or consent of the said Herbert H. White, and, in violation of the terms of said agreement between said White and said Colby hereinbefore referred to.

"Seventh. A certified copy of a license to said schooner, dated at Boston July 24, 1906, is made a part of this agreement."

The agreement between said White and said Colby, above referred to, is as follows:

"Memorandum of an Agreement by and between Herbert H. White, of Brookline, Massachusetts, and Herbert F. Colby, of Boston, Massachusetts.

"Witnesseth, that said White, in consideration of one dollar and the following agreement on the part of said Colby, to be done and performed as hereinafter set forth, agrees to allow said Colby to use the schooner yacht Frolic, and to sell said Frolic to said Colby upon the terms and conditions hereinafter set forth. And in consideration of one dollar and the following agreement, said Colby agrees to purchase said Frolic, as follows: That in the spring of 1903 said Colby will put said schooner yacht Frolic in commission and in condition satisfactory to said White, to use said Frolic as a party boat during the term of this contract, and said Colby shall pay for such use, or towards the purchase price of said Frolic, if said Colby shall fully perform the provisions of this contract, as follows: The sum of $1,500 (fifteen hundred dollars), with interest at six per cent. (6%) per annum upon all deferred payments, payable $60 (sixty dollars) on or before July 9, 1903, $60 (sixty dollars) on or before August 9, 1903, $60 (sixty dollars) on or before September 9, 1903, and $60 (sixty dollars) on or before October 1, 1903, and as much more during the season of 1903 as the earnings of said yacht Frolic will warrant; and like sums shall be paid on the same dates during the years 1904, 1905, 1906, and so on, until said Colby shall have paid said White in full said purchase price of fifteen hundred dollars and interest.

"Said Colby also agrees to pay to said White in each of the years during the life of this contract a sum not to exceed $60 (sixty dollars) for the premium on insurance of said yacht Frolic, for the benefit of said White and payable to said White in case of loss. Said Colby moreover agrees to pay for such damages as the insurance policy does not cover.

"Said Colby also agrees to have personal charge of said yacht Frolic, and to keep her at all times in a condition satisfactory to said White, and shall not let said Frolic to rough or disorderly parties, and shall allow said White to use said Frolic whenever such use will not conflict with the renting of said Frolic to third parties, and shall keep full and accurate account of all expenses occasioned by the operation of said yacht as aforesaid, which accounts shall be open at all times to the inspection of said White, and shall be subject to his approval or disapproval. Said Colby is to be allowed $2 (two dollars) for each day that he shall be obliged to absent himself from his employment at the W. G. Bell Company, of Boston, in order to operate said Frolic as aforesaid, and said Colby shall allow said White to retain towards the sum aforesaid all money derived from parties which said White shall obtain.

"In case said Colby shall fail to perform any part of his agreement as herein set forth, said White can then take immediate possession of said yacht Frolic, and said Colby shall immediately return her to such place as said White may designate, and shall put her out of commission, properly covering her, and shall surrender to said White all such new fittings and furnishings, including any new tender, that he may purchase; and said Colby shall recompense said White for all such damages as may be occasioned by his act or neglect, reasonable use, wear and tear, and unavoidable casualty excepted, and to forfeit all such payments as he, the said Colby, shall have made previously.

"It is understood and agreed that said Colby, his heirs or assigns, shall have the right and option at any time to demand from said White, his heirs of

assigns, a full and complete title to said yacht Frolic upon the payment of any balance of said purchase price, with interest, which may at that time remain due to said White.

"It is agreed that, in the event of the loss of said yacht Frolic before the completion of this contract, said White, his heirs or assigns, shall pay to said Colby, his heirs or assigns, from the money received from the insurance, the full amount of money, with interest at six per cent. (6%) from the date of payment thereof, which said Colby shall have paid said White on account of the purchase price of said yacht Frolic; provided, however, that if for any reason the insurance should be void or should have lapsed, or should in any way be less than a sum sufficient to pay said White the balance of the purchase price, with interest, due him, said White and said Colby, their heirs or assigns, shall share the money received from insurance in proportion as their interests may appear.

"In witness whereof, we have hereunto and to an instrument of like tenor and date set our hands and seals this twelfth day of December, A. D. 1902.

"Herbert H. White.
"Herbert F. Colby.

"In presence of Warren A. Chase."

Upon the certificate of enrollment appear the following ·"Indorsements of Change of Master":

"District of Boston & Charlestown, Port of Boston,
"July 18th, 1905.

"Herbert F. Colby, having taken the oath required by law, is at present master of the within-named vessel, in lieu of Herbert H. White, late master.

"J. E. Hesseltine, Deputy Collector of Customs."

"District of Boston & Charlestown, Port of Boston,
"July 21st, 1905.

"Byron A. Miller, having taken the oath required by law, is at present master of the within-named vessel, in lieu of Herbert F. Colby, late master.

·"Wm. F. Jones, Deputy Collector of Customs."

"District of Boston & Charlestown, Port of Boston.
"August 22d, 1905.

"E. A. Junkins, having taken the oath required by law, is at present master of the within-named vessel, in lieu of Byron A. Miller, late master.

"Wm. F. Jones, Deputy Collector of Customs."

In the license dated July 24, 1906, Herbert H. White appears as sole owner, and E. A. Junkins as master. White testified that, subsequent to the written agreement with Colby, he appointed Colby master, and had not since that time visited the custom house, and had no knowledge that any person other than Colby had been appointed master; also that but $387 had been paid Colby, against whom there were some counter charges.

Charles A. Wilson, U. S. Atty.
Bingham, Smith & Hill, for claimant.

BROWN, District Judge. Upon the foregoing facts I am of the opinion that, while the title to the vessel did not pass to Colby and remained in White, Colby had such possession and control of the vessel as to authorize him to appoint E. A. Junkins as master. As it is agreed that said Junkins knowingly and in violation of the statutes landed certain Chinese persons at the port of Providence, the schooner Frolic is subject to condemnation.

The claim of Herbert H. White will be dismissed, and a decree of condemnation may be entered.